## MILLER *v.* UNION PACIFIC RY. CO.[1]

*(Circuit Court, D. Colorado.   June, 1883.)*

1. RAILROAD COMPANY—NEGLIGENCE.

   Negligence is the failure to use ordinary care,—that is to say, such care as a person of common prudence would exercise under the circumstances; and where the complaint is that the plaintiff has been injured by the negligence of a railroad company, the question for the jury is, did the railroad company fail to discharge any duty it owed to the plaintiff?

2. NEGLIGENCE—PUSH CARS.

   Where push cars are furnished by a railroad company to be used in transporting materials, and to be propelled by pushing, it is not negligence in the company to fail to supply them with brakes or other means of controlling their movement.

3. MASTER AND SERVANT—RESPONSIBILITY OF MASTER FOR ACTS OF VICE-PRINCIPAL.

   If the master, or another servant standing towards the servant injured in the relation of superior or vice-principal, orders the latter into a situation of greater danger than in the ordinary course of his duty he would have incurred, and he obeys and is thereby injured, the master is liable, unless the danger is so apparent that to obey would be an act of recklessness.

4. SAME—WHO IS A VICE-PRINCIPAL.

   Where a master employs one servant and requires him to work under the orders of another, and gives the latter power to dismiss the former at his pleasure, the latter is a superior servant or vice-principal, and stands in the place of the master when acting in the scope of his powers.

5. RAILROAD COMPANY—USAGE OR CUSTOM—USE OF PUSH CARS TO CARRY EMPLOYES.

   Although push cars are originally furnished to be used only to carry materials, yet if the company permits their use to transport workmen from place to place for such a time and so generally as to become a custom of the road, it may be held to have authorized such use.

McCRARY, J., *(charging jury.)*   The plaintiff in his complaint avers that he has suffered personal injury by reason of the negligence of the Kansas Pacific Railroad Company, and that the defendant is liable therefor.   That the plaintiff was injured while in the employ of said Kansas Pacific Railroad Company, substantially as alleged, is not disputed; but the defendant interposes three separate defenses, which it is your duty to consider.   These are—*First,* that the Kansas Pacific Railroad Company was not guilty of negligence as charged; *second,* that the plaintiff was guilty of negligence which contributed to his injury; *third,* that if there was any negligence other than that of the plaintiff, it was the negligence of his fellow-servants engaged in the same common service with him, for which the company is not liable.

If you find from the evidence that either of these defenses has been sustained, you will find for the defendant.   If you find that neither of them has been sustained, and that plaintiff has suffered injury without negligence on his part, and by reason of the negligence of

---

[1] From the Colorado Law Reporter.

said Kansas Pacific Railroad Company, then you will find for the plaintiff.

You may give your attention in the first place to the question whether the company was guilty of negligence. Negligence is the failure to use ordinary care; that is to say, such care as a person of common prudence would exercise under the circumstances. In the present case the question may be stated thus: Did the Kansas Pacific Railroad Company fail to discharge any duty it owed to the plaintiff?

It is contended on behalf of the plaintiff that the company failed to discharge its duty towards the plaintiff in two particulars, to-wit: *First*, that it failed to furnish him a safe means of transportation from the coal mine to the station, when he was required by its order to go from the former to the latter place; and, *second*, that by its agent, McGrath, who was placed in a position of authority over him, it ordered him into a position of unusual peril, by reason of which he was injured.

As to the first of these particulars, it is to be observed that, to sustain it, the plaintiff is required to prove to the satisfaction of the jury that the push car, upon which the plaintiff was riding at the time of the accident, was furnished by the company to be used for the transportation of employes from place to place upon the line. There is no evidence tending to show that the push car was originally furnished for this purpose. It is clear that if the plaintiff can recover at all, it is not upon the ground that the push car was constructed and placed upon the road for the purpose of being used to transport employes, and was not furnished with brakes, so as to be safely used for that purpose. As the cars were not originally intended to be used for this purpose, but to carry material only, and to be propelled by pushing, it was not negligent in the company to omit to provide brakes or other means of retarding their movement. Whether the company, by permitting the employes to use push cars for the purpose in question, and by its order to McGrath, to be hereafter referred to, has so far consented to such use as to be bound, is a question for you to consider, under the evidence and instructions of the court, which will be presently given you.

Between a railway company and its employes there exists the relation known in law as that of master and servant. When the servant enters into this relation he assumes all the risks ordinarily incident to the duty he undertakes to perform, and on the other hand the master (the railroad company) binds itself not to expose him to any extraordinary risks, or such as do not ordinarily belong to the employment. In accordance with this rule the law is that if the master, or another servant standing towards the servant injured in the relation of a superior or vice-principal, orders the latter into a situation of greater danger than in the ordinary course of his duty he would have incurred, and he obeys, and is thereby injured, the master

is liable, unless the danger is so apparent that to obey would be an act of recklessness. A servant may obey orders coming from one having authority over him, with power to discharge him for disobedience, unless to obey would expose him to danger so glaring that a prudent man would refuse to enter into it even under such orders. In order to make out the allegation that the company was negligent in ordering the plaintiff into a position of unusual danger, the plaintiff must show to your satisfaction—*First*, that McGrath, the foreman, was invested by the company with power to order him to get upon the push car, to be carried to the station, and to enforce such order by a dismissal of the plaintiff from the service, or, what is equivalent, by a request or recommendation which plaintiff knew would result in his dismissal; *second*, that by obeying said order the plaintiff subjected himself to extra danger; and, *third*, that the danger was not so apparent and glaring as to make it an act of recklessness on his part to obey.

Had McGrath authority from the company to use the push car for the transportation of the carpenters from the coal mine to the station? This is a very material question in the case, and one which you must determine from the proof. It is clear that McGrath had authority to order plaintiff from the coal mine to the station for the purpose of taking the train to Cheyenne Wells. Probably he would have possessed this authority as foreman merely; but, however this may be, it is in evidence that he had express orders from the proper officer of the company to take the carpenters, including plaintiff, by the next train to Cheyenne Wells, in order that they might perform certain duties there.

He was authorized by this order to employ such means as were usual and proper to transport the men to the station; and what means would be proper might depend to some extent upon whether great haste was necessary or not. If, in order to carry out his instructions, it was necessary to proceed to the station in a very short time, or if he supposed in good faith that haste was necessary, then he was justified in choosing, among several modes of conveyance authorized by the rules or usages of the company, that one which would enable him to reach the station in the shortest time. But he was not authorized, even for the sake of speed, to adopt a mode of transportation not permitted or sanctioned either by the rules or the customs of the company. If it was customary or usual upon the lines of the Kansas Pacific Company to use push cars for such a purpose, then, under the circumstances, McGrath was authorized by the order under which he was acting, and by such custom, to use the push car in question for that purpose. The company cannot, however, be held to have authorized this use of the push car by McGrath, unless the previous similar use of such cars on the same road had been so common as to be known to the officers having charge of the management of the branch road, or so that, if not in fact known to

them, it might have been known by the exercise on their part of ordinary diligence. It is not necessary that such usage or custom should have existed for a very long period, but it is necessary that it should have existed long enough, and been sufficiently general and notorious, to enable the jury to say that it was an established custom or usage of the road. If the company permitted its employes to use the push cars in this way, and made no objection and took no steps to stop or prevent such use until it became habitual, the employes of the company had a right to assume that it was authorized, and McGrath had the right to resort to it in executing the orders above mentioned; but if, on the other hand, such use of push cars had only been occasional, and was not general or common, then the company was not bound by it.

It is for the jury to say upon the evidence whether McGrath was authorized by the usage of the company, and in view of the law as I have stated it, to use the push car to carry plaintiff and the other carpenters to the station. If he was so authorized, then the jury will proceed to inquire whether he ordered plaintiff to get upon said car to be so transported, and if so, whether, by reason of the character of the grade, the load upon the car, the absence of brakes or other means of retarding the motion of the car, it was extra hazardous for plaintiff to obey the order. If you find that it was, then you will come to the question whether plaintiff was guilty of negligence in obeying the order; or, in other words, the question of contributory negligence. What I have already said will in part apply here. Plaintiff cannot be charged with negligence in obeying an order of his superior, unless he acted recklessly in so obeying. He was not bound to examine the push car, nor to make inquiry concerning the grade, but was at liberty to rely upon the implied promise of the company not to subject him to unusual dangers, unless, from what was patent to him, he must have known that to obey the order would be an act of recklessness. If you find that McGrath was plaintiff's superior, with power to order him to get on the push car to be carried to the station, then the rule I have just stated must guide you in deciding the question of contributory negligence.

Defendant insists that the plaintiff and McGrath were fellow-servants, engaged in the same common employment, and that, therefore, the company cannot be held liable in this case. The rule upon this subject is this: If the company employed plaintiff and required him to work under the orders of McGrath, and gave McGrath power to cause his dismissal at his pleasure, and also directed McGrath to take plaintiff from the coal mine to Cheyenne Wells on the day of the accident, then I hold as a matter of law that in respect to the removal from the one place to the other, and with respect to the time and manner of such removal, McGrath was the superior, and stood towards plaintiff in the relation of vice-principal, or in place of the company.

You are, then, to consider, in the light of the evidence and of these instructions: *First,* whether the company authorized McGrath to use the push car for the purpose named, and his authority may be shown by proof that such use was in accordance with an established custom of the company, as above explained, but is not shown in this case unless you find such custom has been proved; *second,* if you find that such authority is proved, you will proceed to inquire whether the order given by McGrath to plaintiff in pursuance of such authority required the latter to incur unusual danger, resulting in his injury; and, *third,* whether plaintiff was guilty of contributory negligence, or was injured by reason of the negligence of a fellow-servant, within the rule I have laid down.

If you find for the plaintiff upon these questions, you will then come to the question of his damages, in considering which you will take into account the nature and extent of his injuries, whether they are permanent or not, to what extent he is deprived of earning a living by the pursuit of his usual occupation or otherwise, as well as his pain and suffering, loss of time, and expenses of medical treatment and nursing. From all the facts and circumstances as developed before you in the evidence, you will, if your verdict is for plaintiff, assess his damages at such reasonable sum as in your judgment will compensate him for his injuries.

If you find for the defendant, you will simply say so by your verdict.