CLARENCE B. COATES *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.     January 16, 1891. — February 26, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, & MORTON, JJ.

*Railroad — Negligence — Injury to Employee — Concealed Danger — Evidence.*

A brakeman was ordered by the conductor of a freight train, under whom he was working in a freight yard, to separate coal cars in the middle of the train from box cars at the rear, and in so doing to ride upon one of the coal cars.   He proceeded to get upon the rear coal car, as brakemen usually do in the absence of means for getting upon this kind of car, by climbing over the side.   He put one hand on the top of the car and tried to put his left foot upon the jaw-strap, an appliance placed out of sight under the body of such a car to strengthen it.   The jaw-strap of the rear car had been gone for some time, and his foot went on to the rail just as the train was starting, and was crushed.   *Held,* in an action brought by him against the railroad company to recover for his injuries, that he was entitled to go to the jury.

Evidence that it was customary for brakemen on the railroad, and especially in that yard, to get on over the side, was *held* to be admissible to show that the order of the conductor also fairly implied that the plaintiff should get on in the usual way, as he tried to do.

TORT, for personal injuries occasioned to the plaintiff, while in the defendant's employ, at the freight yard in Lynn, upon the Eastern Division of the defendant's railroad.   At the trial in the Superior Court, *Pitman,* J. refused to rule that the plaintiff could not recover upon the evidence, and submitted the case to the jury, which returned a verdict for the plaintiff; and the defendant

alleged exceptions, which, so far as material to the points decided, appear in the opinion.

*S. Lincoln*, for the defendant.

*C. G. Fall & G. D. Burrage*, for the plaintiff.

HOLMES, J.   This is an action for personal injuries, and the question is whether there was any evidence on which the plaintiff was entitled to go to the jury.   There was evidence tending to prove the following facts.

A train with coal cars in the middle and box cars behind them was to be broken up in the defendant's Lynn freight yard.   As the train was about to start, the plaintiff, a brakeman, was ordered by the conductor, under whom he was working, to separate the box cars from the coal cars, and to ride upon one of the coal cars, probably for the purpose of pulling out the pin and separating the box cars behind.   He started to get on the rear coal car from the side, put one hand on the top, and tried to put his left foot on the jaw-strap, an iron bar running below and between the ends of the axles out of sight under the body of the car.   The jaw-strap was not there, the plaintiff's foot went on to the rail, the train was just starting, and his foot was crushed.

The jaw-strap was intended only to strengthen the car.   But the coal cars are not provided with any means for getting upon them, and the usual way in which the men got upon them was over the side, using the jaw-strap as the plaintiff attempted to do.   The jury were warranted in finding that the plaintiff, although not directed to get upon this particular car, naturally would do so, and would be expected to do so in carrying out his orders, and in the way in which he did, and that he might have done so prudently if the jaw-strap had been there.   We cannot say, as matter of law, that there was no prudent way of getting on to this kind of car for men experienced in the business, or that the way adopted was not the best.   The conductor might have been found free from negligence in giving the order, even if he had ordered the plaintiff to get directly upon this car, as he did not know of the absence of the jaw-strap, so far as appears. On the other hand, there was evidence that the jaw-strap had been gone for some time, from which it might be inferred that the company knew of its absence, so that the jury might have found that the company ordered the plaintiff into a place where

there was a concealed danger known to the company, and not known to the plaintiff or to the superior servant giving the order, and of which the plaintiff received no warning.    If they had found these facts, they might have found that the plaintiff was not negligent in not looking before he stepped, in view of the order of the company and of the haste necessary under the circumstances.    See *Lawless* v. *Connecticut River Railroad*, 136 Mass. 1.

We do not consider whether, in view of the constant use of the jaw-strap as a means of getting upon the car and the fact that we cannot pronounce it to be a negligent use, the company might not properly be taken to have notice of it, and if it did not prohibit such use, which probably would have seemed absurd to all concerned, then to be bound to see that the jaw-strap was reasonably safe for this secondary use, although not that for which it was designed.    No such question is open on the exceptions.

We do not put our decision on the identification of master and servant, and a union of the knowledge of the corporation and the command of the conductor in one person, by a fiction. But we think the jury might have found, at least, this negligence on the part of the corporation: that, knowing the condition of the car, it put a conductor there with men under him, having reasonable ground to anticipate that such orders would be given as were given, without warning either him or the men.

In order to connect this anterior negligence of the corporation with the plaintiff's injury, it was necessary to show that the plaintiff actually was ordered into the dangerous place.    The jury might have inferred that the fair import of the order was to get on to the last coal car from a consideration of what was to be done.

Evidence that it was customary for brakemen on the Eastern Railroad, and especially in that yard, to get on over the side, was admissible to show that the order also fairly implied that the plaintiff should get on in the usual way, as he tried to do.

We are far from saying that the broader considerations laid before the jury were not correct, but we confine our decision to what is sufficient to dispose of the exceptions.

*Exceptions overruled.*