## LAUTER *v.* DUCKWORTH.

[No. 2,049. Filed Dec. 17, 1897. Rehearing denied March 10, 1898.]

NEGLIGENCE.—*Master and Servant.—Personal Injuries.—Complaint.* —A complaint for damages for personal injuries received by plaintiff while in the employ of defendant in his factory, which alleges that defendant before hiring plaintiff negligently constructed a large underground cistern for the purpose of receiving discharges of steam, hot water and other fluids through underground pipes; that plaintiff was ordered by defendant to attend to certain duties requiring him to go near to said cistern, and while in the perform-

Lauter *v.* Duckworth.

ance of such duties the ground where he stood gave in, and he was precipitated into a hole filled with steam and hot water caused by such defective cistern and pipes, and was injured, states a good cause of action, where it is also alleged that plaintiff had no warning or notice of the manner of construction of the cistern and pipes, or the dangers arising therefrom, and containing the general averment that plaintiff was wholly without fault. *pp.* 537-539.

APPEAL AND ERROR.—*Assignment of Error.—Failure to Discuss.*— Assignments of error not discussed are waived. *p.* 540.

EVIDENCE.—*Objections.—Practice.*— Defendant was not harmed in the trial of an action for damages resulting from the defective construction of a dry well in his factory by refusing to permit him to state as a witness his experience in the use of dry wells, where he was allowed to describe his experience with the dry well in question. *p.* 540.

SAME.— *Witnesses.— Conversations by Plaintiff With Defendant's Witness.*—No error was committed in permitting defendant's witness to testify on cross-examination as to a conversation between himself and plaintiff and plaintiff's attorney, in the absence of defendant, in which he refused to talk to them concerning the case on trial, where such evidence was introduced for the purpose of showing the feeling of the witness toward the parties. *pp.* 540, 541.

SAME.—*Objections.—Offer to Prove.*—To save a question on a ruling of the trial court in excluding the testimony of a witness, a specific statement, by way of an offer, must be made to the court, of the testimony which the witness will give in answer to the question, and if the bearing is remote or inferential, its relevancy must be suggested. *p.* 543.

DAMAGES.— *Excessive Damages.—When Verdict Will Not be Disturbed on Account Of.*—The Appellate Court will not set aside a verdict of a jury on account of excessive damages where the damages assessed are not so great, in view of the evidence, as to induce the belief that the jury acted from prejudice, partiality, or corruption. *pp.* 543, 544.

SPECIAL VERDICT.— *Finding of Ultimate Facts.*— The ultimate fact to be found by the jury in the trial of an action for personal injuries caused by a defective dry well, was the condition of the well at the time of the accident; a finding of its condition prior thereto would amount to the finding of an evidentiary fact. *pp.* 544, 545.

SAME.—*Interrogatories.*—No error is committed by the trial court in refusing to submit a hypothetical interrogatory to the jury. *p.* 546.

SAME.—*Court May Prepare.*—The purpose of the statute requiring counsel of either side to prepare a special verdict is to relieve the court, and the court may alter interrogatories prepared by counsel, of its own motion frame additional ones, or assume the duty of

Lauter *v.* Duckworth.

drafting another special verdict, and neither party would have cause to complain. *p. 546.*

APPEAL AND ERROR.—*Interrogatories.—Exceptions.— Record.*— An exception to the submission of certain interrogatories to the jury is not properly reserved where the bill of exceptions does not set out the designated interrogatories, or the page in the record on which they may be found,and no draft of the verdict is set out or statement contained in the bill of exceptions to show when the objection was made. *pp. 546, 547.*

NEGLIGENCE.—*Personal Injuries.—Proximate Cause.*—The proximate cause of plaintiff's injury was the negligence of defendant in constructing a dry well and pipes connected therewith for the escape of steam, where it was shown that the well and pipes were so constructed that they could not be seen or inspected, and plaintiff, an employe, while walking over said pipes, in line of duty, and not knowing of the existence thereof, was suddenly precipitated by the surface of the ground giving away,into a hole filled with steam and boiling water which had escaped from said pipes, and was injured. *pp. 547-556.*

MASTER AND SERVANT.—*Fellow Servant.—Negligence.*—It is the duty of the employer to furnish a reasonably safe place for his employes to work, and to remedy such defects that may be discovered by proper inspection, and the negligence of an employe will not excuse him from such duty. *pp. 555, 556.*

From the Marion Superior Court.     *Affirmed.*

*Lucius B. Swift,* for appellant.

*J. E. McCullough* and *H. N. Spaan,* for appellee.

COMSTOCK, J.—Action by appellee to recover damages for personal injuries occasioned by the alleged negligence of appellant. The complaint is in two paragraphs, but as it is conceded that the verdict was on the second paragraph, we do not set the first out. The second paragraph alleges that the defendant was the owner of a factory, and before hiring plaintiff, constructed an underground cistern near the factory to receive through pipes large discharges of steam, hot water and other fluids, and permitted the same to soak away through the bottom. The cistern was walled with loose bricks, not cemented to protect it from the action of the materials discharged into it.

The pipes to the cistern were laid in a drain four or five feet deep, which was filled level with the surface. The surrounding earth was not protected from the action of the fluids in the cistern, except by said loose walls. The surrounding earth was peculiarly subject to being affected by the action of steam, hot water, and other fluids, and all being caused thereby to soak and wash into the cistern. The mouths of the pipes were close to the bottom of the cistern, so that the deposits of earth or mud would soon cover and fill them, and the resulting pressure in the pipes would cause them to burst. The pipes were old, worn, rusted, and weak with use, and were therefore defective and unfit for the purpose; the cistern was covered with iron and other materials, and then with earth to the level of the surrounding surface, so that its condition could not be observed. The defendant knew, or could have known, by reasonable care, that by cementing the walls the same could have been protected from the destroying influences of steam, water, and other fluids, and that without such protection the walls would be impaired and destroyed, and the surrounding earth deposited in the cistern, and the ground around the cistern would be undermined by an excavation filled with steam and hot water, and would cave in. He also knew, or could have known, that by deposits in the cistern, the mouths of the pipes would become choked, and caused thereby to burst and discharge steam and hot water under ground, outside of the cistern; and thereby cause the dirt to be washed into the cistern, causing a dangerous excavation under the surface. He also knew that his employes would have to pass over the surface. The pipes, with a trifling expense, could have been run to a sewer and all danger avoided. It further alleges, that on the tenth of May, 1893, the appellee was employed at the factory as engineer, and

was ordered by the defendant to attend to a certain valve, and for that purpose he had to go frequently to a point near the cistern; and while he was at or near said point, for the purpose of attending to said valve, the ground where he stood gave in and he was precipitated into a hole filled with steam and hot water, and was injured. That said hole was caused as follows: The action of the steam and hot water and other fluids in the cistern, caused the walls thereof to be impaired and destroyed, the surrounding earth to be deposited therein, said pipes at the mouth to be choked and bursted, and said hole to be formed under ground and to be filled with steam and hot water, and which the defendant knew or could have known. Up to the time of the injury, the plaintiff had no warning or notice of the manner in which said cistern was constructed and the pipes laid, or the dangers arising therefrom, and he had no knowledge or means of knowledge thereof. It contains the general averment that plaintiff was wholly without fault, and the specific averments are not inconsistent with this general averment.

A motion to make this paragraph more specific and a demurrer to the same, were both overruled and appellant answered by general denial. The jury returned a special verdict. Both parties moved for judgment thereon. The court overruled defendant's (appellant's) motion, and sustained that of appellee, and rendered judgment in his favor for $3,500.00. The errors assigned are, first, overruling the motion to make the second paragraph more specific; second, overruling the demurrer to the second paragraph of appellant's complaint; third, overruling appellant's motion for judgment upon the special verdict; fourth, overruling appellant's motion for a new trial; fifth, sustaining appellee's motion for judgment in his favor.

The first assignment of errors is not discussed, and is therefore waived. As to the second assignment, i. e. the overruling of the demurrer to the second paragraph of the complaint, we think it stated a good cause of action, and the court committed no error in the said ruling.

The fourth assignment is the overruling of appellant's motion for a new trial. The first reason assigned in the motion for a new trial, is the sustaining of the objection to the following question propounded to appellant by his counsel: "What has been your experience as to the use of dry wells in your own business?" Counsel for appellant stated at the time that the witness (defendant) was not on the stand as an expert, but he built the dry well or ordered it built, and he offered to show that the appellant after long personal experience with dry wells in his own manufactories, and that added to his experience with the dry wells subject generally, was what guided him in building this well. The court said, "You may ask him all about this dry well." Appellant's counsel thereupon propounded to the witness questions as to the tendency of pipes conveying steam and waste water from steam pipes to get dirty or foul; whether a dry well constructed as described by witness was likely to become stopped up with the amount of water running into it, that ran into the dry well in question; as to the objects of the outlet valves of the steam boxes; the nature of the ground in which the dry well was built; to each of which he made answer. Witness had previously testified as to how a drain or dry well should be constructed. He was given the privilege of telling how this one was constructed. We cannot see, therefore, that he was harmed by this ruling of the court. The second reason for a new trial is the permission of the witness

Henry Holt, upon cross-examination, to testify to a conversation between himself and appellee and appellee's attorney, in the absence of appellant. The witness was defendant's witness, and in his employ. He had testified to material facts in his behalf; he had dug and walled the dry well in question. The plaintiff and his attorney sought to ascertain what information he would give as to the construction of the well. He refused to talk to them, and was asked if he did not so refuse, and he answered that he said he would do no talking to anybody. The question was proper. It was calculated to elicit information as to the feeling of the witness toward the parties. *Pettit* v. *State,* 135 Ind. 393.

The third reason for a new trial is the admission of the testimony of plaintiff (appellee) as to the probability of leaks occurring in steam pipes. The question objected to was, "What is the probability of leaks coming in steam pipes,—even in new pipes,—at the joints?" Counsel for appellant objected to the question for the reason "that the complaint is in regard to waste pipes running from steam pipes into a dry well, and unless he can show that these pipes into the dry well were stopped up so that they might have had a much stronger pressure, I object to any such proof." The jury found that from the manner in which the pipes were placed in the drainage and dry well, and used while so placed, they were liable to become full and choked at or near the mouth, by deposits therein of mud and water and other materials, and that if said pipes so laid should become foul at or near the mouth, there would be in some of them, a high degree of pressure caused by steam coming through the pipes from the boiler, and that by the exercise of reasonable care, these facts could have been known to the defendant. The jury further found that the pipes were

stopped up, and there was evidence to warrant these findings. In this ruling there was no error.

The fourth and fifth reasons for a new trial are, that the court erred in admitting certain testimony of the witness Ballinger in answer to questions propounded to him, which were objected to. The first was, "What is the fact as to whether steam pipes when there is steam in them,—whether leaks will come into them or not?" The objection should have been sustained, because of the indefiniteness of the question. Whether leaks would come into pipes, would depend upon a variety of causes. The witness gave an answer, not, however, in response to the question but to the effect that a leak in a pipe would not be discovered without pressure was applied, unless the opening was large enough to be seen. The statement could not have misled the jury. The other question was, "What is the fact when a leak does come in a steam pipe, as to whether it increases it, and if so, whether rapidly or slowly?" The objection to this question was that it related to pipes that had pressure from the boiler, and not to the pipes that are described in the complaint, and it tended to mislead the jury." What we have said as to the findings of the jury, as to the pressure in the pipes, upon the previous question addressed to this witness, will apply to this objection.

The sixth reason given, is that the court erred in admitting in evidence the testimony of witness Ballinger, as to the effect of hard water in a boiler and pipes through which it passes. The witness in answer to the question immediately preceding the one under consideration, had stated, that soft water was not so likely to corrode pipes as hard water; which answer was followed by the question whether, when hard water was used, there was a deposit from it in the boiler and pipes from which it passed. The

objection made was, that "there was no hard water passed through the pipes described in the complaint, containing water and steam." Appellant's counsel in his reply brief, admits that the evidence shows that hard water in small quantities, passed through the pipes. This was sufficient to make the evidence competent. Its weight was for the jury.

The seventh reason for a new trial is the exclusion of the evidence offered by defendant of witness Charles C. Brown, a civil engineer, who in September, 1894, inspected the dry well, and dug out the drainage in question, at the request of the appellant.

Counsel for appellant stated to the court at the time of this ruling, that he wanted "to show how it was when inspected by a disinterested man at that time and that he expected to show the condition of the well and the other matters found there." No other statement was made as to what he expected to prove in answer to the question. This was an offer to prove the condition of the well sixteen months after the injury of the plaintiff, and its condition at that time was not material. To save a question on the ruling of the trial court in excluding the testimony of the witness upon an objection being made to a pertinent question, a specific statement by way of an offer, must be made to the court of the testimony which the witness will give in answer to the question. The offer of proof must be a statement of the particular fact or facts and if the bearing of the proposed testimony is remote and inferential, its relevancy must be suggested. *Chicago, etc., R. W. Co.* v. *DeBaum*, 2 Ind. App. 281; *Lewis* v. *State, ex rel.*, 4 Ind. App. 504; *Stanley* v. *Holliday*, 130 Ind. 464; *Russell* v. *Stone*, 18 Ind. App. 543, and the authorities there cited.

The eighth reason is that the damages assessed are excessive. Appellant's learned counsel frankly ad-

mits the serious character of appellee's injuries. Upon this assignment, we deem it only necessary to say, that the damages assessed are not so great. in view of the evidence, as to induce the belief that the jury acted from prejudice, partiality or corruption, and that therefore, this court would not, under numerous decisions of the Supreme Court of this State, be sustained in disturbing it. *Ohio, etc., R. W. Co.* v. *Collarn*, 73 Ind. 261, 38 Am. Rep. 134; *Pittsburgh, etc., R. W. Co.* v. *Sponier*, 85 Ind. 165; *Todd* v. *Fenton*, 66 Ind. 25; *Farman* v. *Lauman*, 73 Ind. 568; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Kelsey* v. *Hay*, 84 Ind. 189; *Ohio, etc., R. W. Co.* v. *Judy*, 120 Ind. 397.

The ninth reason is, that the verdict is not sustained by sufficient evidence. The verdict consists of 187 interrogatories and answers. Counsel for appellant, in his able brief, designates and discusses numbers 11, 12, and 126. It will be presumed that the interrogatories not pointed out are sustained by some evidence. There are apparent contradictions in the evidence, and it was for the jury to reconcile them. Interrogatory 11 reads: "Was said dry well when constructed, applied to the purpose of receiving through pipes from said manufacturing establishment, discharges of steam and hot water with the intention of permitting the same to seep and soak away through the ground from said dry well? Answer. Yes."

Interrogatory 12 reads: "Was said dry well continuously applied to said purpose by the defendant from the time of its construction until the 10th of May, 1893? Answer. Yes."

It is contended that there is no evidence to warrant the finding that the dry well was constructed either for the purpose of receiving discharges of steam or that prior to the employment of appellee it had been

used for that purpose. The evidence shows that steam escaped through the vent pipe from the dry well. It does not appear that the well was constructed for receiving it, neither does it appear that it was the fault of appellee that steam was conveyed to said well. Appellant must be held to know the manner of construction and the use to which it was put, and if this improper use was permitted by him, it was equivalent to its construction for such use so far as his liability might be affected for damages resulting from such use.

Interrogatory 126 reads: "At the time of plaintiff's injury were said waste pipes of said well stopped up? Answer. Yes." In view of the fact that the day after the accident the well was uncovered, and found to be filled some feet above the mouths of the pipes with mud and water, we cannot say that the jury was not justified in finding as a fact that the pipes were stopped up. The tenth and eleventh reasons are not discussed, and are therefore waived.

The twelfth reason is the refusal of the court to submit the following interrogatory in the draft of the special verdict prepared by defendant's counsel. "When said dry well was opened to be deepened, was the same in good condition?" The dry well was opened in July, 1892, and the accident occurred in May, 1893. Appellant contends that the evidence shows it was in good condition at that time, and that the evidence was competent as tending to show its condition at a later time. The office of the special verdict is the finding of ultimate facts. The ultimate fact to be found by the jury, was its condition at the time of the accident. A finding of its condition prior to that day would have been the finding of an evidentiary fact. The interrogatory was properly refused.

VOL. 19—35

The thirteenth reason is not discussed and is therefore waived.

The refusal to submit the following interrogatory, number 109, is given as the fourteenth reason for a new trial. "If the steam inside said dry well exerted any appreciable pressure, would the same exert any appreciable effect on the soil outside said brick wall?" The question is objectionable because it is hypothetical, and was properly refused.

The fifteenth reason for a new trial is, that the court erred in submitting to the jury its own draft of a special verdict. The bill of exceptions shows that the counsel for appellant excepted to the giving of certain interrogatories, and not as contended, to the verdict submitted by the court. The purpose of the statute in requiring the counsel of either side to prepare a special verdict, is to relieve the court. It has been held by this court, that the trial court may alter interrogatories prepared by counsel, and of its own motion frame additional interrogatories. This exception is not well taken and it is not, therefore, necessary to decide the question raised in appellant's brief. If the trial court saw fit to assume the burden of drafting another special verdict, neither party would have cause to complain.

The reasons for a new trial from sixteen to thirty-six inclusive, are upon alleged errors in the submission of interrogatories to the jury. The following are the recitals in the bill of exceptions. The court submitted to the jury its drafts of its special verdict prepared by the court, and the defendant objected to the submission to the jury of the interrogatories in said draft, numbered respectively, 148, 150, 151, etc., which said interrogatories were in the words and figures following, to-wit:

"(Heretofore inserted being on page —— of this

transcript,) but the court overruled the objection to each of said interrogatories to the jury, and submitted the same to the jury, to which action of the court in so submitting each of said interrogatories, the defend-ant separately and severally objected, etc." The words in parenthesis are evidently by the clerk. The interrogatories designated, or the page or pages on which they may be found, are not set out in the bill of exceptions, neither does it set out the draft of the verdict nor show when the objection was made. For these reasons the questions are not properly reserved.

The following is a fair summary of the facts found by the jury, omitting conclusions of law and findings not essential to the decision of the cause:

The defendant's factory on May 10th, 1893, con-sisted of a main building about 250 feet long from east to west, partly three and partly four stories above the basement, with a lumber shed and dry kiln extending south from the main building at the west end thereof and with an engine room and a boiler room extending from south of said main building to a point some one hundred feet east from the west end of the main building. An enclosure on three sides of an area of ground lying south of the main build-ing was thus formed, which was owned and occupied by defendant as a part of the premises of his manu-facturing establishment from May, 1892, to May 10th, 1893, inclusive. About May 30th, 1892, defend-ant caused the construction under ground on said premises, of the dry well in question, located about fourteen to sixteen feet south of the main building and west of said engine room and east of the lumber shed and dry well. In constructing said well, he caused to be laid in a trench, three pipes, extending from said factory into said well, covered with two boards lengthwise of said trench, forming an inverted

V shaped trough. The upper edges of said boards came together, the pipes resting on the dirt in the bottom of the trench, after which the trench was filled with earth until it was even with the surface of the ground. Said trench was not opened again until after the 10th day of May, 1893. Said well, when constructed, was applied to the purpose of receiving through pipes from said manufacturing establishment, discharges of steam and hot water, with the intention of permitting the same to seep and soak away through the ground from said dry well, and was continuously applied to said purpose by defendant from the time of its construction until the 10th day of May, 1893. Said pipes were laid for the purpose of conducting discharges of steam and hot water from said establishment to said well. At the time of its construction, the well was walled within about two feet from the top of the ground with bricks, without any mortar or cement. It was covered first with railroad iron, then with board upon which two feet of dirt was placed to within fourteen inches of the surrounding surface of the ground. On the 3rd of July, 1892, defendant caused the top to be removed, dug two feet deeper, and again covered it in the same manner as above described, to the level with the surface of the surrounding ground. At the last named date a two inch pipe was put in the top of said well, extending three feet above its top. Said pipe was the only opening left in the top of said well when so recovered, and said well was not reopened or inspected until after May 10th, 1893. At the time it was so re-covered it was walled with bricks laid dry, without cement or mortar. It was, when re-covered, four feet in diameter and eleven feet deep. The walls were not cemented either on the inside or on the outside, and were not protected in any way from the action

Lauter *v.* Duckworth.

thereon of steam and hot water that might be in said well. Said pipes entered the well from five to seven feet below the surface of the ground. A short elbow joint was placed on each one, inside the well, with the mouths of the pipes turned up. No change was made in this arrangement until after the 10th of May, 1893, and no inspection of them was made to see whether they were filled with any deposits, from July, 1892, until after May 10th, 1893. The wall of said well was four inches in width. When said well was constructed nor at any time thereafter, was there anything to prevent water from passing out of the well into the trough formed by the boards laid over said pipes in said trench, when the water of the well was up to or above the mouths of said pipes. At the time plaintiff was injured, water and mud stood above the mouths of said pipes in said well. When said factory was in operation, steam came through the pipe placed in the top of the dry well. Between July, 1892, and May, 1893, large quantities of live steam came through said pipe. A part of the pipes laid in said trench were old. They were not tested by pressure from steam or water, to determine whether they would leak or not. It is necessary to test steam pipes and joints thereof, with pressure of either steam or water to determine whether they will leak.

The well was dug by one Henry Holt, an employe of defendant, and a laborer employed with him. It was rewalled by Holt in July, 1892. Holt was not a brick-mason nor a mechanic, but a common laborer. The north edge of the well was about eighteen feet and three inches south of said factory. It was dug in circular form about ten feet down to gravel. When first constructed, the trench and dry well were left open a couple of days. The well was used before the trench containing the waste pipes and before the well was

covered.   It was constructed to receive the condensed water from the steam pipes, and the overflow water from the glue pots and water from a drinking place in said factory.  It was the duty of the cabinetmakers to adjust the outlet valves of said dry boxes in said basement.   The only water sent into the dry well was the condensed water from the heating apparatus in the basement of the factory and the condensed water from four single dry boxes and one double dry box in said basement, and the overflow water from one glue pot on the third floor, and two glue pots on the second floor and the condensed water from the steam pipes of one glue pot in said basement, and the water from said drinking place.   The water of glue kettles and drinking place was but a few buckets daily.  There were about 777 feet of steam pipes in the basement, 1060 in the dry boxes, and 100 feet of the supply pipes carrying steam from the boiler to said steam pipes in said basement.   The dry boxes and the glue kettles in the basement were each furnished with an inlet valve by which steam could be let in to said steam pipes, and each with an outlet valve by which the water condensed from said steam pipes could be let out into said waste pipes.   There were three waste pipes carrying water into said dry well running from said basement south to said dry well connected with said dry boxes and heating apparatus and glue kettles and drinking place.   When the outlet valves were properly adjusted, they allowed the water to pass from said steam pipes, and kept all but very little steam back.   Any steam that might be in the waste pipes or well, could readily pass out of said vent pipe.  Plaintiff, from February, 1893, to May 10th, 1893, was engineer of said factory.   It was not his duty to regulate said outlet valves.   It was his duty to see that steam was not wasted.   Many times he saw steam

enough coming through said vent pipe to run a small engine. One of the waste pipes carried cold water, the other two hot, to the dry well. After the well was deepened, said waste pipes entered the well about four feet from the bottom. When the well was re-walled, the wall was cemented around the pipes. The well was in, and the pipes were laid through, sandy soil, running into sand and gravel. It was not such a well which is in general use for like purposes.

The defendant was not familiar with the use of dry wells for the purpose for which this well was intended. Plaintiff, at or before the time of his injury, knew that said well was walled with bricks, not cemented, and that the pipes were laid with their mouths turned upward, and were laid in a trench under said boards. Plaintiff was injured on the 10th of May, 1893, about four o'clock in the afternoon, when acting as engineer in said factory, by breaking through a crust of earth near said dry well and sinking into and below the hot mud about four feet deep, two feet north of the north edge of said dry well. The boiler room had a door opening into the yard where said well was located. The boiler and engine rooms were located east of said dry well and extending south from said main building. About three feet south of the main building, in said factory yard, and about seven feet east of the trench in which said pipes were laid, there was a valve. When the plaintiff broke through the ground he was not at said valve. He had gone into the yard to look after the steam, near the valve, he saw rising. He was on his rounds at the time he broke through. There was at said time in said yard, directly south of said valve, a large cistern, about eighty-one feet from said valve. A line direct from said valve to said cistern, would pass about three feet east of the east side of said dry well. When

plaintiff broke through, he was going from said valve to the cistern or dry kiln, intending to pass around west of said dry well. The direct course from said valve to the said cistern is south, and would lie east of said dry well. A course which led past the western edge of the dry well, would be seven feet out of a direct course. Before plaintiff fell, steam did not come out of the ground at the point where he broke through. Before he was injured, he did not observe from the boiler room, that the steam had ceased to come out from the vent pipe of the dry well.

The superintendent of the factory many times complained to the plaintiff, that steam was being wasted through said dry well. At the time of his injury, plaintiff regarded said dry well as dangerous. At the time plaintiff was injured, he went into the yard to look after the escaping steam. Just before he was injured he went from the boiler room into the yard. He could, by means of valves in the engine room, diminish the steam passing into said steam pipes from said basement. At the time plaintiff was injured, said waste pipes were not bursted. In carrying on said factory, teams and vehicles were daily driven into said yard, around said well, and over the top thereof. It was necessary to use said yard over the top of said well for teams and vehicles, for the purposes of said factory. The men in charge of the dry boxes in the basement were in the employ of the defendant. The workmen using said dry boxes in said basement, adjusted the inlet and outlet valves. When the trench was filled after laying said waste pipes, the material put back therein was not well packed. When the plaintiff broke through the ground at the time of his injury, he was standing directly over said waste pipes and two or three feet north of said well. At the time plaintiff received his injury, it was his

duty to go into said yard on his rounds, looking after steam and valves. When the plaintiff was injured, his duty took him to the point where he broke through the ground, inspecting the valves. He could not have been at said valve and fallen into the hole where, he fell into. Said pipes placed in said trench and dry well were liable to become foul or choked at or near the mouth, by deposits therein of water and mud and other materials. If said pipes so laid in said trench became foul or choked at or near the mouth, there would be in some of them so laid in the trench, a high degree of pressure, caused by steam coming through the pipes from the boiler. The dirt over said boards with which said trench was filled was of such a character as to be affected by the action of hot water and steam coming into contact therewith that might escape from said pipes or come into said trench from said dry well. From July, 1892, to the time of plaintiff's injury, wagons drove over said trench between the dry well and the said building on the north, and where it was necessary for the employes of the defendant to pass over said trench. At the time of his injury, plaintiff had been in the employ of defendant three months. On the 10th of May, 1893, while plaintiff was engaged as an employe, doing what he had been directed to do through his superintendent, and while passing over said trench between said dry well and said factory, the surface of the ground suddenly gave in, precipitating plaintiff three or four feet, at least, into a hole filled with boiling water, steam, and mud. At that time there was nothing on the surface of the ground to indicate that it was unsafe, and he passed along said place, and over said trench. It was apparently solid on the surface and substantially level with the surrounding surface. Plaintiff had no knowledge or warning of any kind that there was any

hole under the surface of said ground at said point, or that it was improper to pass over the ground at said point.  The hole in which plaintiff was precipitated was caused by the action of steam and hot water coming through said dry well, and from said pipes laid in said trench, passing under the surface of the ground at said point.  Plaintiff's being precipitated into said hole, and consequently injured, was approximately caused by the improper construction of said well, and connecting of said pipes therewith, for the purposes to which they were applied, and by defendant's failure to have the same inspected at reasonable intervals of time, and his failure to provide any means whereby the same could be inspected at reasonable intervals, and so maintaining said dry well and pipes in said condition without inspection at reasonable intervals.

He failed in said duty, in failing to leave said dry well so it could be inspected.  At the time plaintiff was precipitated into said hole, he was scalded and injured in his legs, arms, hands, and other parts of his body, and on his face, and rendered sick and disabled. He was confined to his bed five months, and caused great pain and suffering.  Ever since said injury he has been lame in his foot and his hands, and continually caused to undergo more or less pain and suffering, and has ever since been incapable of following his ordinary vocation of an engineer, and has been more or less permanently lame and disabled.

After eliminating from the verdict findings which are conclusions of law, there yet remain facts found showing that the negligent construction and maintenance of the well and connections with the pipes conveying hot and cold water caused the injury to the appellee for which he sues.  He had the right to act upon the belief that the ground over which he walked

upon the premises of his employer, while in the discharge of his duty was, as it appeared to be, safe. The mere fact that he knew the well was dangerous would not raise an inference of negligence on his part. He did not walk over, nor fall into the well. He had no knowledge of the condition of the earth beneath the surface which would have admonished him of danger. He was walking upon ground daily traversed by himself and fellow workmen. If he had intended to go from the valve just south of the building to the large cistern, eighty feet away, passing either the west or south side of the well, he would not be required to follow a straight line between those two points; and a departure therefrom of several feet would not be negligence, as appellant's counsel contend, if the route selected was apparently safe. The assumption of risk implies a knowledge of danger. The danger here was not apparent. It was not incumbent upon appellee to inspect the well or the pipes. It was the duty of the appellant to see that the well and its connections were reasonably safe. The findings are not inconsistent with the general tenor of the complaint. The findings show that the well was constructed by men without skill or experience in that line of work; that no effort was made thereafter from July 3, 1892, until the appellee received his injury, to ascertain its condition; and that, by reason of appellant's failure to inspect the same, appellee, while in the line of his duty, received severe and permanent injuries, without fault upon his part contributing proximately thereto.

Appellant's able counsel contend that it was the improper admission of steam into the well which rendered it unfit for the uses for which it was intended, that this improper use was the result of the negligence of the fellow employes of appellee, and that, therefore, appellant is not liable. This rule

which the appellant invokes, is not applicable to the facts found. The negligence of fellow servants can not excuse the employer from his duty to provide a reasonably safe place for his employes, and to remedy such defects as might have been discovered by proper inspection. In this duty he failed.

Appellee, in his examinations before trial, and while testifying as a witness, was not always, as pointed out by appellant's counsel, consistent in his statements as to his exact position at the time he received his injury, and what he had been doing, and what he intended to do, immediately preceding the accident. The jury, as it was their province, doubtless gave due consideration to these apparent discrepancies, and gave proper weight to his testimony. The main facts are not in dispute, the manner of the construction of the well; the connections, and uses to which it was put; the condition of the ground; the place, manner, and character of appellee's injuries. We have examined the voluminous record with care, and find no errors for which the judgment of the trial court should be reversed. Judgment affirmed.