## DAYTON & WESTERN TRACTION COMPANY v. MARSHALL.

[No. 5,453. Filed November 14, 1905.]

1. DAMAGES.—*Excessive.—Ascertainment.*—Where the damages assessed are so great as to induce the belief that the jury acted from prejudice, passion, partiality or corruption, or that they misunderstood or misapplied the evidence, such damages are excessive. p. 491.

2. SAME. — *Excessive. — Interurban Railroads. — Ejecting Passengers.*—Where the conductor of an interurban railroad ejects a lady nine squares from her home, before sunset, causing her no bodily harm, no malice being shown, a verdict for $400 damages is excessive. p. 492.

From Wayne Circuit Court; *Henry C. Fox,* Judge.

Action by Iona Marshall against the Dayton & Western Traction Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Robbins & Starr,* for appellant.

MYERS, P. J.—Appellee instituted this action against appellant for damages, on the ground that she had been wrongfully ejected from one of appellant's cars. The issues consist of a complaint in one paragraph, answered by a general denial. The cause was tried by a jury, resulting in a verdict and judgment in favor of appellee for $400.

The only question presented by this appeal is: Did the trial court err in overruling appellant's motion for a new trial? One of the causes assigned for a new trial is that the damages assessed by the jury were excessive.

Our Supreme Court and this Court have many times held that damages assessed by a jury will not be considered as excessive, unless they are such as to induce the belief that the jury, in awarding damages, acted from prejudice, passion, partiality or corruption (*Creamery, etc., Co.* v. *Hotsenpiller* [1902], 159 Ind. 99; *Louisville, etc., R. Co.* v. *Miller* [1895], 141 Ind. 533;

*Ohio, etc., R. Co.* v. *Judy* [1889], 120 Ind. 397; *Southern Ind. R. Co.* v. *Davis* [1904], 32 Ind. App. 569; *Lauter* v. *Duckworth* [1898], 19 Ind. App. 535; *City of Frankfort* v. *Coleman* [1898], 19 Ind. App. 368, 375, 65 Am. St. 412); or that they misunderstood or misapplied the evidence (*Cincinnati, etc., R. Co.* v. *Worthington* [1903], 30 Ind. App. 663, 96 Am. St. 355).

From the record in the case at bar it appears that on August 29, 1903, appellant was engaged in operating an interurban railway over part of Main street in the city of Richmond, Indiana, and east through Wayne county and to and beyond the line dividing the states of Ohio and Indiana; that appellee on said 29th day of August purchased from appellant a certain coupon book containing 100 coupons, each coupon being good for a ride of five miles over appellant's railway, subject to certain exceptions and conditions stipulated in the contract under which said book was sold; that on September 16, 1903, between 4 and 6 o'clock in the afternoon, appellee entered one of appellant's regular cars at or near Eleventh street in the city of Richmond, to be carried as a passenger to a station called "Kuth", situated on appellant's line of road, about four and one-half miles east of Richmond. Between the point where appellee boarded the car and Twentieth street a controversy arose between appellee and appellant's conductor with reference to the number of coupons she should surrender as her fare to the point of her destination. Appellee's account of what occurred is as follows: "I told him [the conductor] I would not pay two fares. 'Then,' he says, 'you will have to leave the car.' And he stood there a few minutes, and then he said: 'You will have to get off.' He rang the bell and stopped the car, and said, 'Get off.' He repeated it a number of times, and stood there in the aisle. I waited—I did not think he would—I didn't suppose he would put me off of the car; and he stood back in the aisle and waited, and said: 'You will have to

get off.' The car came to a stop, and I left the car and got off. The conductor walked behind me and talked all the way. He said he was doing his duty and he was ordered by the company to do what he was doing." The conductor's account of what occurred upon the evening of September 16 does not vary materially from that detailed by appellee, except that he claims to have more fully explained to appellee the position he occupied relative to the company, and that it was not a matter personal to him, and that she replied by saying that she attached no blame to him personally. The question of the number of coupons to which appellant was entitled for her transportation between the two points had been considered on two or three occasions prior to this time, and upon this occasion she refused to entrust the book to the conductor, but held it in such a manner that he could take one coupon. From the record we think it clear that the controversy was not unexpected to appellee. The general verdict of the jury amounts to a finding in appellee's favor upon the merits of the case, and, this being true, the question of the amount of damages was largely within the discretion of the jury, as the law in cases of this kind does not furnish the jury with any exact guide or measure by which they may determine the same. For this reason, in such cases, courts hesitate to interfere with the jury's conclusion, and will not do so unless it is clearly apparent that the jury went wide of the facts and assessed damages which can be sustained only upon the theory of prejudice, partiality, passion or corruption.

In the case at bar it is alleged that by reason of the wrongful act of appellant in ejecting appellee from the car she was prevented on that evening from keeping a business engagement with certain scholars, to whom she was giving instructions in music; that a little before 6 o'clock in the afternoon she had to walk nine squares in returning to her home; that her expulsion from the car in the presence

and sight of a great number of passengers caused her great humiliation and mental suffering. Conceding that the wrongful act of appellant resulted in her disappointment as stated, caused her to return home in the manner and under the circumstances charged, and humiliated her, as averred in the complaint, yet, in the light of all the facts, is not $400 as damages an extravagant assessment, when the law only purposes to repair the injury done? *Graeter* v. *Hogan* (1891), 2 Ind. App. 193.

The time when appellee was ejected from the car was after 4 o'clock and before 6 o'clock in the afternoon, and the court will take judicial notice that at that time in the afternoon on September 16 it was not yet sunset. *Cincinnati, etc., R. Co.* v. *Worthington, supra.*

In the case at bar there was no bodily injury done appellee, no evil results to her health, no malice or undue display of authority on the part of appellant's conductor; in fact, no element of damages existed on which to base such an assessment, except that the judgment of the jury must have been controlled by motives of charity, prejudice or partiality, and upon no other grounds can we account for it. When it is apparent that the jury have acted on a motive of this character, as testified to by their verdict, it is one of the highest duties of the court to interfere by setting the verdict aside and submitting the cause to a second jury. It is the unbiased, unprejudiced and impartial judgment of juries which should prevail, and, as we have heretofore said, great latitude should be allowed them in their estimate of damages, but to this there must be a limit, and this limit is overstepped when, from the facts of the case, it is apparent at first blush that the damages allowed are outrageously excessive. *St. Louis, etc., R. Co.* v. *Myrtle* (1875), 51 Ind. 566, 570; *Union Pac. R. Co.* v. *Hand* (1871), 7 Kan. 380, 393; *Louisville, etc., R. Co.* v. *Minogue* (1890), 90 Ky. 369, 14 S. W. 357, 29 Am. St.

378; *Clapp* v. *Hudson River R. Co.* (1854), 19 Barb. 461, 466. From all the facts in this case, appellant's motion for a new trial should have been sustained on the ground that the damages assessed by the jury were excessive.

Judgment reversed, with instructions to the trial court to grant a new trial.