## LYLE v. ALABAMA GREAT SOUTHERN RY. CO.

(Circuit Court of Appeals, Sixth Circuit. May 5, 1906.)

### No. 1,480.

MASTER AND SERVANT—ACTION FOR KILLING OF BRAKEMAN—QUESTIONS FOR JURY.

Plaintiff's intestate, a brakeman, when attending to the coupling of two freight cars, on one of which he was riding, stepped upon the bumper of such car which was loose and turned, throwing him to the track where he was run over and fatally injured. In an action to recover for his death on the ground of defendant's negligence in failing to inspect the bumper and keep it in repair, there was evidence tending to show, not only a custom of brakemen in performing the duty in which deceased was engaged to step upon the bumpers, but also that in the particular case it was necessary for him to do so in order to get off the car and make the coupling. Held, that such evidence presented questions for the jury, and that it was error to direct a verdict for defendant on the ground that the bumper was not intended to be used as a step and defendant therefore owed no duty of inspection to deceased, but his death was due to his own negligence in using it for an illegitimate purpose.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 1020.]

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

Samuel Bosworth Smith, for plaintiff in error.
Lewis Shepherd, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit to recover damages for the wrongful death of the plaintiff's intestate, one Milton Lyle, a brakeman killed while in the employ of the defendant company. The court directed a verdict for the defendant. The question is whether the case should have gone to the jury. The defendant was charged with negligence in permitting a bumper on a gondola car to become loose and out of repair, so that when Lyle stepped upon it, it turned,

and he was thrown to the ground and run over; also in not making a proper inspection which would have disclosed the defect. In giving the peremptory instruction, the court sustained the position of the defense, that the bumper was intended solely to receive and lessen the shock of meeting cars, and not, under any circumstances, as a foothold or part of the platform; therefore, the company was not obliged to inspect the bumper with a view of ascertaining whether it was firm, and Lyle, in stepping upon it as he did, was attempting to put it to an illegitimate use, for the result of which the company could not be held responsible. In other words, it was the negligence of Lyle, and not that of the company, which caused the accident.

The accident occurred while a number of freight cars were being made up for delivery on the belt line at Chattanooga. A switch engine had thrown one car on the track and then "kicked" another car, gondola No. 4,515, down the track toward the standing car, for the purpose of coupling the two together. Lyle was standing on the forward end of the moving car for the purpose of controlling its approach and attending to the coupling. The car was equipped with an automatic drawhead or coupler. On each side of the drawhead was a bumper (or buffer or deadwood), placed there to receive the shock of the meeting cars and protect the drawhead. Each bumper was made of cast iron and was fastened to the car by a rod which passed through its center, and was held in place by a nut underneath the car. With the nut tight, the buffer was stationary and firm, being held in place by lugs which were set into the sill, but if the nut became loose, the lugs would cease to hold and the buffer turn on the rod. The sill or platform of the car was about 12 inches deep, and at the right of the bumper, attached to the outside of the sill, was a brake, the staff of which originally stood up straight, with a brake wheel at the upper end, 15 inches in diameter. A rod from the automatic coupler ran past the brake to the corner of the car. This rod, which acted as a lever, could be manipulated by a brakeman standing on the ground, for the purpose of putting the drawhead in position to couple. On that side of the car near the corner was a stirrup or step used to get on and off the car. As we have stated, Lyle rode down on the forward end of this gondola. While it was still moving slowly, he stepped on the loose bumper, which turned with him, and he was thrown on the track and run over, receiving fatal injuries.

The question is whether he had a right, under the circumstances, to use this bumper as a foothold, relying upon its being in repair and firm and stationary. If he did, the company should have inspected it and kept it firm and stationary, or so marked it as to indicate that it was not firm and stationary. If he did not, there was no duty of inspection for the purpose indicated, and Lyle was guilty of contributory negligence in using the bumper for an illegitimate purpose. In determining this question, or rather in determining whether the court below was correct in deciding it in favor of the company, it has been necessary to examine carefully the testimony in the case. Upon three material points the testimony is conflicting: First, as to what Lyle actually did, whether he stepped upon the bumper for the purpose of go-

ing around the brake, or of jumping off the car; second, as to the necessity of his getting off the car before it struck the other one; and, third, as to the possibility of his passing behind the brake wheel, and between it and the end of the car.

Upon the first point, a witness for the plaintiff testified that Lyle, immediately after he was injured, in answer to the question, "How did it happen?" said "he went to go around the brake wheel and stepped on the bumper and it turned with him." One witness for the defendant testified that Lyle said after the accident, that "he attempted to jump down and the bumper turned with him." Another, that he said "he stepped on the buffer to get off the car and it turned with him." In view of this conflicting testimony, it was within the province of the jury to accept the statement of the witness for the plaintiff as to what Lyle said he was doing.

As to the second point, the necessity of his getting off the car while it was still in motion, it appears from the testimony that this would depend upon whether he knew at the time that the automatic coupler on both cars were properly set to couple. The knuckles or jaws might be open or they might not, and a brakeman might know of their exact condition or he might not. If there was any uncertainty, it then became necessary for him, after regulating the motion of the car, to pass to the stirrup or step, and get off, so as to manipulate the lever or rod from the ground. There was such a conflict upon this point that the question was clearly one for the jury.

As to the third question, the possibility of passing behind the brake wheel, and between it and the end of the car, two witnesses employed at the plant where the car was delivered after the accident, one its superintendent, and the other the shipping foreman, both testified that they were on the car the day after the accident, and attempted to pass behind the brake wheel but could not. It is true some photographs of the car were taken two years after the accident, showing that at that time a person was able to pass behind the brake wheel, but the photographs, as well as the testimony, showed that at that time the brake rod had been bent outward from the end of the car, so that there were four or five inches more space between the brake wheel and the car than there was when the brake staff was standing perpendicular. Four or five inches might readily make the difference between being able to squeeze through and being obliged to go around.

Taking the view of the evidence most favorable to the plaintiff, we have a case where the brakeman stepped upon a bumper in order to get around the brake and reach the stirrup or step used to get off the car. He did this because it was necessary for him to reach the ground in order to be ready to manipulate the lever which controlled the couplers, and he went around the brake because there was no room for him to go between the brake wheel and the end of the car. Along with these facts, we have the custom which certainly obtained on this belt line, of using the bumper as a foothold in going around the brake. All the brakemen testified to it, and it would seem a custom natural enough in the lack of room between the brake wheel and car to pass that way.

It is to be observed that this is not a case where, an appliance having been furnished for the purpose under consideration, the employé illegitimately used another furnished solely for a different purpose, as in The Persian Monarch. 55 Fed. 333, 5 C. C. A. 117, and Maxfield v. Graveson, 131 Fed. 841, 65 C. C. A. 595, and cases cited. Under the view which the jury might have taken, there was no way provided for the brakeman to get from the inside to the outside of the brake, except by going around it, and in doing so, the natural thing was to step on the bumper. The custom grew out of the exigency of the situation, and must have been known to the railway company. At any rate, the jury might have so found, and that, under the circumstances, the company was guilty of negligence in not inspecting the bumpers to find whether they were safe, and in not keeping them safe for such use. 1 LaBatt Master & Servant, § 28; Lauter v. Duckworth (1897), 19 Ind. App. 535, 48 N. E. 864; Coates v. R. R., 153 Mass. 297, 26 N. E. 864, 10 L. R. A. 769; Coley v. R. R., 129 N. C. 407, 40 S. E. 195, 57 L. R. A. 817; Dunn v. R. R., 107 Fed. 666, 46 C. C. A. 546; Miller v. Ry. (C. C.) 17 Fed. 67; Young v. R. R., 69 N. H. 356, 41 Atl. 268.

Believing the case was one for the jury, the judgment is reversed, and the cause remanded for a new trial.