[S. F. No. 543.   In Bank.—March 24, 1898.]

LILLIAN HOLMES, as Administratrix, etc., of William E. Holmes, Deceased, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

NEGLIGENCE — RAILROAD — COUPLING CARS — DIFFERENCE IN ELEVATION OF DRAWHEADS.— The mere fact that the drawheads of two freight-cars which a switchman on a railroad was engaged in coupling, and which were otherwise in good condition, differed in elevation from the track by from two to three inches, is not of itself sufficient evidence of the negligence of the railroad to render it liable for an injury suffered by the employee while in the act of coupling.  If the risk of the switchman's occupation was thus increased, it was a risk which he assumed by his contract.

ID.—FELLOW-SERVANT — SWIFTLY MOVING CARS. — The fact that the cars were too rapidly moved by the engineer, if negligence at all, was the act of a fellow-servant, for which the company is not responsible.

ID.—RULE OF COMPANY—IMPRACTICABILITY OF OPERATION—PUBLIC POLICY.— A rule promulgated by a railroad company, purporting to direct its employees with respect to the manner in which they should perform certain work, which is utterly impracticable in operation, or rendered so by the mode and conditions under which the service is required, and the only result of which would be to relieve the employer from the obligations imposed upon him by law to use ordinary diligence in furnishing safe appliances with which to work, and safe conditions. for the performance of the service, is against public policy and void, and its nonobservance by the employee will not relieve the railroad from liability for a negligence for which it would otherwise have been liable.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.  A. A. Sanderson, Judge.

The facts are stated in the opinion of the court.

J. C. Campbell, and William F. Herrin, for Appellant.

It is not negligence for a railroad company to use cars of unusual height, or of different standards or styles of coupling. (*Norfolk & W. R. Co. v. Brown,* 91 Va. 668; *Van Winkle v. Chicago etc. R. Co.,* 93 Iowa, 509; *Pittsburg etc. R. Co. v. Henley,* 48 Ohio St. 608; *Thomas v. Missouri Pac. Ry. Co.,* 109 Mo. 187; *Toledo etc. Ry. Co. v. Black,* 88 Ill. 112; *Michigan Cent. R. R. Co. v. Smithson,* 45 Mich. 212; *Kohn v. McNulta,* 147 U. S. 238, 241;

*Louisville & N. R. Co. v. Boland*, 96 Ala. 626; *Boland v. Louisville etc. R. Co.*, 106 Ala. 641; *Woodworth v. St. Paul etc. Ry. Co.*, 18 Fed. Rep. 282; *St. Louis etc. Ry. Co. v. Higgins*, 44 Ark. 293; *Fort Wayne etc. R. R. Co. v. Gildersleeve*, 33 Mich. 133; *McLaren v. Williston*, 48 Minn. 299; *Welch v. New York Cent. etc. R. Co.*, 17 N. Y. Supp. 342; 63 Hun, 625; *Hulett v. St. Louis etc. Ry. Co.*, 67 Mo. 239; *Norfolk & W. R. Co. v. Emmert*, 83 Va. 640; *Whitwam v. Wisconsin etc. R. R. Co.*, 58 Wis. 408; *Simms v. South Carolina Ry. Co.*, 26 S. C. 490.

Delmas & Shortridge, for Respondent.

It was the duty of the defendant to furnish safe and suitable machinery, appliances, and instrumentalities, and to keep them in good repair. (*Fay v. Minneapolis etc. Ry. Co.*, 30 Minn. 232; *Ohio etc. Ry. Co. v. Pearcy*, 128 Ind. 197; *Gottlieb v. New York etc. R. R.*, 100 N. Y. 462-67; *Chicago etc. Ry. Co. v. Branyan*, 10 Ind. App. 570; *Rigdon v. Alleghany etc. Co.*, 59 Hun, 627; 13 N. Y. Supp. 872; *Sanborn v. Madera Flume etc. Co.*, 70 Cal. 265; *Colbert v. Rankin*, 72 Cal. 199; *Mullens v. California Horse Shoe Co.*, 105 Cal. 83; *Congrave v. Southern Pac. Co.*, 88 Cal. 369; *Daves v. Southern Pac. Co.*, 98 Cal. 24; 35 Am. St. Rep. 133; *Nixon v. Selby Smelting Co.*, 102 Cal. 463.) The flat car was not a safe appliance. (*Mason v. Richmond etc. Ry. Co.*, 111 N. C. 482; 32 Am. St. Rep. 814; *Reed v. Burlington etc. Ry. Co.*, 72 Iowa, 166; 2 Am. St. Rep. 243; *Gottlieb v. New York etc. Ry. Co.*, 100 N. Y. 465; *Ohio etc. Ry. Co. v. Pearcy*, 128 Ind. 197; *Louisville etc. Ry. Co. v. Williams*, 91 Ky. 199; *Chicago etc. R. R. Co. v. Jackson*, 55 Ill. 494; 8 Am. Rep. 661; *T. W. & W. Ry. Co. v. Fredericks*, 71 Ill. 295; *Wedgwood v. Chicago etc. Ry. Co.*, 41 Wis. 478; *Cowles v. Richmond etc. R. R. Co.*, 84 N. C. 309; 37 Am. Rep. 620; *Texas etc. v. Guy* (Tex Civ. App., Oct. 1893). 23 S. W. Rep. 633; *Bennett v. Northern Pac. Ry. Co.*, 2 N. Dak. 112; *Gibson v. Pacific Ry. Co.*, 46 Mo. 163; 2 Am. Rep. 497.)

TEMPLE, J.—This action was brought by the administratrix of William E. Holmes, deceased, to recover damages for the death of the decedent, which it is alleged was caused by the negligence of the defendant.

The defendant denies that it was negligent, and charges contributory negligence on the part of the deceased.

The negligence charged against the defendant is alleged to consist in the improper construction of the two cars which deceased was in the act of coupling when he was injured, and in the alleged neglect to repair the same and to keep them in good condition. The defendant contends that there was no proof that either car was defective, and certainly none of negligence in that matter on the part of the defendant.

It is admitted that the burden of proof is on the plaintiff, and that the mere fact of the accident and consequent injury does not prove negligence, but respondent contends, nevertheless, that the accident and the attendant circumstances do show that one or both of the cars were defective. Respondent states the facts which she claims prove the defective construction of the cars as follows:

"1. That William E. Holmes, the plaintiff's husband, was caught and crushed between the flat-car and the box-car which he was trying to couple; 2. That he was so caught by the passing of the drawbar of the flat-car over the top of the drawbar of the box-car, so that the end of the flat-car crushed into the end of the box-car; 3. That the flat-car after the accident was raised off its bearings, and the body of the car was on the truck; 4. That the drawbar of the flat-car passed over the drawbar of the box-car because one was higher than the other."

It is evident that the first three statements have very little bearing upon the matter unless the fourth is also established, and, even admitting all four, it may still be true that neither car was defectively constructed. That is, it may be that the accident would not have happened had not the drawhead upon one car been higher than the other, and yet there may have been no defect in either. It is admitted that the standard elevation of drawheads had been thirty-three inches from the rail to the center of the drawhead, and that the box-car was of that standard. Also that the flat-car was of a new standard, to wit, thirty-four and one-half inches. There is really no evidence of any other difference in the drawheads. There is also testimony that both cars were until the accident in their normal condition; and as to this there was no conflict, unless the condition of the cars after

the collision may be said to furnish such conflicting evidence. The fact of the collision would seem to be an adequate reason for the condition of the car after it.

The box-car heavily loaded was standing with other cars upon one of the numerous tracks at Paralta station, and three flat-cars loaded with lumber were kicked in upon this track. That is, having been set in motion, the engine was suddenly detached and the cars moved on by the momentum thus acquired. Deceased was under a foreman assisting in the work, and it was his duty to attach the cars thus "kicked" upon the siding and to couple them to cars already there. The cars were all loaded and waiting their turn to be put in the proper trains. They were coupled so that when wanted the file or line of cars could be easily cut at any desired point without coupling. Of course, they could not be coupled when none were moving.

It was in the night-time, and each man had his lantern. The flat-cars were moving at the rate of about two or three miles per hour when the collision occurred. It was the duty of deceased if they were moving too rapidly to mount one of them and check its speed and determine whether it could be safely coupled. In fact, he did not mount the car, but stood at the box-car. Apparently, he set the pin in its drawhead and waited for the moving car. As they came together, he was seen to signal a stop, and when the men went to his rescue they found him crushed between the cars, his face to the box-car. The link of the flat-car had slipped over the drawhead of the box-car, had run up along the pin and had raised the car from its bearings some ten or twelve inches. The collision was with great force, driving the pin, which had been set, into the box-car. The engine was then attached, the flat-car drawn back, and the deceased was released. The flat-car settled down upon its truck, when its drawhead was from two to three inches higher than when in its normal condition. In that position it was coupled to the same box-car.

We must conclude, then, that both cars were shown, without conflict, to have been in their normal condition. Was, then, the difference between the drawheads a defect which could render the defendant liable, or was the increased risk, if any, one which the servant assumed by his employment? Probably the de-

ceased, without noticing the unusual height, raised the link in the drawhead of the flat-car to the usual level, which caused it to strike the upper lip in the drawhead of the loaded box-car, and the great force of the collision forced the link up over the drawhead of the box-car against the pin up which it was forced, raising the flat-car entirely above the drawhead and deadwood of the box-car, so that the end of the flat-car came against the deceased, causing his death.   Perhaps it would not have happened if one car had not been higher than the other, and perhaps not then if the cars in motion had not moved so rapidly. So far as the last-mentioned circumstances may have increased the risk, it was, if negligence at all, the act of a fellow-servant or the consequence of the failure of the deceased to slacken the speed of the cars.   This being an uncertain element, the verdict must be held to have negatived it as a cause of the accident.

There was evidence, which was not contradicted by adverse testimony, to the effect that switchmen are likely to be called upon to couple cars between which there is a much greater difference than that between the two cars involved here.   Cars from other roads having different drawheads are in constant use, and the cars built upon the same plan and on the same standard often by use are made to vary, as the testimony showed, to the extent of three inches.   True, the inspector puts upon such cars a cripple tag as soon as he detects the defect, and, when possible, they are rectified.   But a switchman is liable to have to couple them before the defect is noticed, and must always be on the alert for them.   In other words, if the risk of his occupation is thus increased, it is a risk which he assumes by his contract.   It is manifest that the coupling could have been safely made if the brakeman had been on the alert—at all events, if the cars had not been moving at a very high speed.

I think, therefore, that there was no evidence tending to prove negligence on the part of the defendant in the respects named.   There was no evidence tending to prove that either car was out of repair or that the difference in the height of the drawheads exceeded one and one-half inches, and there is no conflict in the evidence showing that such difference may be expected, and, when due diligence is used, does not materially increase the danger.   The burden being upon the plaintiff, the verdict cannot be maintained.

No further discussion is required for the purposes of this appeal, but counsel have argued at considerable length the effect of a certain rule made by defendant and to which the attention of the deceased was called at the time of his employment. Rule 215, among other things, provides that "employees are enjoined before coupling cars or engines to examine and know the kind and condition of the drawhead, drawbar, link and coupling apparatus. . . . . Sufficient time is allowed and may be taken by employees in all cases to make the examination required. Coupling by hand in all cases is strictly forbidden when a stick or proper implement can be used to guide the link," etc.

Upon the trial, plaintiff introduced testimony to the effect that the rule had been not only habitually but universally disregarded, and also the following, brought out on cross-examination: "Q. Do you know anything about the use of a stick to guide the link into the drawbar? A. They say some people use them, but I would laugh at them if I saw them using them. Q. It is used for the purpose of coupling it from between the cars and guiding the link into the place instead of using the hand? A. You might think so, but it is utterly impossible. Q. What is it used for? A. They cannot make a coupling; they might say it in the books, or any book, but they cannot do it. Q. So far as your experience is concerned? A. Yes, or anyone else."

Upon this the defendant asked the court to charge the jury as matter of law: "That the rule was reasonable, and that employees have no right to judge of the reasonableness of the rule, but must obey them as long as they remain in the employ of the company, and the fact that the rule may be impracticable and not observed does not excuse the employee who is injured by its nonobservance from negligence. Therefore, if you believe from the evidence that if William E. Holmes had followed the rule of the company and used a stick to make the couplings he would not have been injured, then the mere fact that the rule was impracticable or not observed will not excuse the negligence of Holmes in not following the rule." The court refused this instruction, and the ruling is assigned as error.

If the rule was utterly impracticable, or rendered so by the mode and the conditions under which service was required, and the servant is injured because not following an impracticable

rule, and cannot, therefore, maintain an action for damages, then the rule is plainly not for the protection of the servant but of the employer. It is a provision relieving the employer from the obligations imposed upon him by law, to use ordinary diligence in furnishing safe appliances with which to work and safe conditions for the performance of the service. So far as the rule has that effect it is against public policy and void.

The employer is conclusively presumed to know how the service is habitually performed. Where the usual mode is departed from the presumption would not prevail; and to make such a rule as this of any avail, even if not otherwise objectionable, the work must be so conducted that the servant may take the precautions prescribed, otherwise it is only a provision against the liability of the employer and not a rule designed for the protection of the servant. The court, therefore, did not err in refusing the instructions asked.

The judgment and order are reversed, and a new trial ordered.

Harrison, J,. McFarland, J., and Henshaw, J., concurred.

Van Fleet, J., concurred in the judgment.

GAROUTTE, J., dissenting.—I dissent. Two loaded freight-cars came together while a brakeman was between them in the act of making a coupling. His death was the result. The verdict of a jury held the defendant guilty of negligence and awarded damages. The case is now reversed and a new trial ordered upon the ground that the evidence does not justify the verdict. I do not agree with such conclusion. The jury was justified from the evidence in finding that these two cars were both cars belonging to defendant; that the standard height of the drawheads of defendant's freight-cars was thirty-three inches from the rail; that there was a difference in the height of the drawheads of these two cars of at least one and one-half inches; and that, therefore, one of the cars was defectively constructed or became defective after construction. Having found these facts, the jury were entirely justified in finding that the accident was occasioned by reason of the mismatched drawheads. Defendant had no right to furnish two such cars to the brakeman to be coupled, and was guilty of negligence in so doing.

Rehearing denied.