DUNN v. NEW YORK, N. H. & H. R. CO.

(Circuit Court of Appeals, Second Circuit. April 3, 1901.)

No. 112.

MASTER AND SERVANT—INJURIES TO BRAKEMAN—APPLIANCES—DUTY TO INSPECT —PRESUMPTION OF NEGLIGENCE.

A brakeman was set to work in switching with a road engine regularly used for that purpose, but unprovided with any special hand hold in front, necessary in his work. No particular projection was used, and the use of any particular one was not forbidden. The brakeman, however, used the figure plate, which was adapted thereto, and most convenient for a man of his size. It had been loose for 24 hours, but was apparently all right when he took hold of it. It gave way, however, and he was thrown under the cowcatcher and injured. *Held*, that the company owed him the duty of inspecting the plate commensurate with the purpose for which it must be assumed that it knew it was used, and hence, on proof of the foregoing facts, it was error to nonsuit him in an action for damages, enough being shown to require some proof of inspection to overcome the presumption of negligence.

In Error to the Circuit Court of the United States for the Eastern District of New York.

This cause comes here upon a writ of error to review a judgment dismissing the complaint upon the merits at the close of plaintiff's case. The action was brought to recover damages for injuries received while in the employ of defendant as a brakeman upon one of its trains at or near Union City, Conn. The plaintiff, at the time he was injured, was engaged in uncoupling freight cars from the forward end of an engine, which operation necessitated his pulling a pin with one hand, and with the other grasping some part of the locomotive to steady himself. He grasped the round plate fastened in the middle of the forward end of the boiler, and known as the "figure plate," on which are the figures indicating the number of the locomotive. Upon the occasion in question this plate was loose, so that it turned when the plaintiff applied pressure, and, support being thus suddenly and unexpectedly withdrawn, he was thrown under the pilot, or cowcatcher, of the engine, and received the injuries for which this action is brought. There was evidence in the case showing that, on the day before, the figures were turned so as to make it obvious that the plate itself had been turned. On the day of the accident, as plaintiff testifies, when he looked at the figure plate, the figures were all right; that is, in a horizontal position.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. The record contains no indication as to the grounds on which the plaintiff was nonsuited. The burden, of course, rested on the plaintiff to show a default on the part of defendant in respect of some of the duties imposed upon it. Plaintiff's contention is that there was a failure properly to inspect the figure plate. Plaintiff's evidence on that point was extremely slight, but was sufficient to require the defendant to show what sort of inspection, if any, it gave to the part in question. The evidence tended to show that it had been loose for 24 hours. Concededly, it was in-

sufficient to support plaintiff on the day of the accident,—facts sufficient to put defendant to the proof of the methods it employed to guard against the occurrence of such an accident. When such proof is in, it may be apparent that, under all the circumstances, defendant acted as a reasonably prudent master would have done in looking after the safety of the place where and the appliances with which its servant was set to work; but, with no evidence to show that the figure plate had ever been inspected since it left the builder's shop, we do not think it can be said, as a matter of law, that no negligence was shown. The defendant, however, contends that it was under no obligation whatever to give the figure plate such an inspection as it would give to a hand hold, and from the attention given to this point in the briefs it may be inferred that it is the one on which the case turned below. The proof shows that the engine in question was a road engine, and not a yard or switch engine, and had none of the appliances customarily placed on the front and rear of engines engaged in switching, to facilitate the work of the men. There was not a single hand hold, hand grab, or grab iron upon or about the front of the engine. Nevertheless, the defendant employed the engine regularly in performing a considerable amount of switching work in a number of cities and yards where no switching engines were kept, and the engine was engaged in the general performance of this switching work when the accident happened. The way in which the work of the brakeman is performed when uncoupling a car from the locomotive is as follows: Standing on the right side of the engine, the left foot would be placed upon a step projecting from the bottom of the cowcatcher near the outside edge, and the right foot either upon the lower bar of the cowcatcher, to which the slats are fastened, or in the air-brake hose, which hung in front of some of the slats. Thus the body of the brakeman would be facing in a slanting direction towards the front of the engine, and his right shoulder would be pointing diagonally towards the center of the track. His back would be more towards the car than the engine. He would thus have to turn his body or his right arm towards the right, and back, in order to reach the pin in the drawhead, which projects out in front of the cowcatcher. From this description and an inspection of the photographs which were submitted on the argument, it is plainly manifest that the brakeman must take hold of something with his left hand, or he will almost inevitably lose his balance, and fall between the engine and the car. As has been seen, the defendant provided nothing devised specially to be held on to; nor did it, by any regulation, direct or forbid the men to use some particular part of the engine for that purpose. As was to be expected, therefore, the men used whatever they found convenient. Besides the figure plate, it appears from the evidence that use was sometimes made of the bull nose, an iron casting extending from the bumper beam to the drawhead. This, however, was about on a level with the waist, and for that reason unsatisfactory. The same is true of the slats of the engine, which are below the bumper. To grasp them the hand would get considerably lower than where the pin is being pulled.

The lamp brackets on the side of the boiler a little above the level of the figure plate have been used, but they are further back, and so more inconvenient, unless a man is exceptionally tall. The same difficulty exists with regard to the iron sockets that were used for flags on the brace beam of the engine. It would be quite a long reach; impossible, indeed, for a man with no longer reach than the plaintiff. The braces supporting the boiler were conveniently located, but too hot to hold. Three witnesses, brakemen, were examined, besides the plaintiff. They were all taller men, and testified that, besides the figure plate, they used sometimes one, sometimes another, of these appliances for a hand hold. The plaintiff, however, finding it most convenient to his proportions, usually took hold of the figure plate. It appears, then, that the defendant set this engine to work switching, and put plaintiff to work on it at a place where defendant knew he must hold on to something. It provided no special hand hold; it directed no particular projection to be used as such; it forbade no such use; it maintained on its engine a figure plate, adapted for use as a hand hold, and so located that a man of plaintiff's size would find it the most convenient thing to take hold of. There was abundant evidence to support this last proposition; indeed, mere inspection of the photograph would seem to be sufficient to satisfy any intelligent mind that, if this engine were used for switching, its figure plate would most certainly be used for a hand hold. Knowing it would be so used, if for any reason it was difficult to maintain it firmly in position, or to inspect it, the defendant might have prohibited its use for that purpose. Not having done so, it owed a duty of inspection commensurate with the purpose which it must be assumed that defendant knew it was subserving. We are of the opinion, therefore, that it was error to take the case from the jury when plaintiff rested. There was enough proved to require some proof from defendant as to what inspection there was of the figure plate. The judgment is reversed, and cause remanded for new trial.