[No. 6917.   Decided January 28, 1908.]

### BEN H. STURGEON, *Appellant*, v. TACOMA EASTERN RAILROAD COMPANY, *Respondent*.[1]

MASTER AND SERVANT—NEGLIGENCE OF MASTER—SAFE APPLIANCES— DEFECTIVE CARS—CUSTOMARY USE OF CAR. Where a railroad company is aware of an habitual custom of brakemen to use a cross-piece of a wood rack on a wood car for the purpose of boarding the car while it is being switched, it is the duty of the company to keep the same reasonably safe for such use, although not originally intended for that purpose.

SAME—CONTRIBUTORY NEGLIGENCE—CUSTOMARY METHODS—OPERA-TION OF TRAINS. A brakeman is not guilty of contributory negligence, as a matter of law, in attempting to board a wood car, while switching at the rate of one to four miles an hour, where there was evidence by trainmen of years of experience that it was customary on all railroads to board such cars in the identical manner employed by him.

SAME—DUTY TO INSPECT—RULES OF COMPANY. A railroad company cannot by rules impose upon a brakeman the duty of inspecting cars about to be switched, so as to escape liability for a defective cross-piece in a wood rack, whereby the brakeman was injured in attempting to board the car, on a dark morning, with but little opportunity to inspect cars while engaged in his other duties.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered April 18, 1907, granting a nonsuit at the close of plaintiff's case, in an action for personal injuries sustained by a brakeman while boarding a moving train. Reversed.

[1]Reported in 93 Pac. 526.

*Burkey, O'Brien & Burkey,* for appellant.

*E. M. Hayden* and *John A. Shackleford,* for respondent.

Rudkin, J.—On, and for some time prior to, the 27th day of January, 1906, the plaintiff was in the employ of the defendant as a brakeman on one of its logging trains. Between the hours of 4 and 6 o'clock of the morning of the above date, the train on which the plaintiff was employed stopped at Nelson's Siding, on the line of the defendant's road, to take up some empty cars on a side track. There was a flatcar partly loaded with wood in front of the empties which the train was about to pick up, and in order to reach the empties the engine was backed up and attached to this wood car. The wood car was next attached to the empties and the train drawn forward onto the main track. The empties were then kicked back onto the main track and the plaintiff turned the switch in order that the wood car might be returned to its original position on the side track. As he turned the switch the plaintiff signaled the engineer to back the train onto the siding, and, as the train approached him at a speed of from one to four miles an hour, he attempted to board the wood car for the purpose of setting the brake when the car reached its proper position on the siding, by placing his left hand and left knee on the drawhead and seizing one of the cross-pieces of the wood rack with his right hand. The cross-piece thus seized was defective and gave way. In an effort to save himself the plaintiff attempted to throw himself clear of the train, but his left foot was caught and crushed. This action was brought to recover damages for the injury thus received. At the close of the plaintiff's case the court directed a nonsuit, and from the judgment of nonsuit the present appeal is prosecuted.

Under the facts thus presented two questions arise: (1) Was there testimony tending to show negligence on the part of the respondent; and (2) was the appellant guilty of con-

tributory negligence as a matter of law. The respondent contends that the wood rack in question was not intended for use as a ladder by trainmen in boarding cars, but there was no testimony on this point. On the other hand, trainmen of years of experience testified that it is customary, not only on respondent's road but on all railroads, for brakemen to board cars such as this in the identical manner in which the appellant attempted to board the car in question. If this custom prevailed and was known to the respondent, or should have been known by the exercise of reasonable diligence, it became its duty to make its wood racks reasonably safe for the purpose for which they were habitually used, regardless of the purpose they were originally intended to subserve. *Wallace v. Seaboard Air Line R. Co.*, 141 N. C. 646, 54 S. E. 399; *Dunn v. New York etc. R. Co.*, 46 C. C. A. 546, 107 Fed. 666; *Babcock Brothers Lumber Co. v. Johnson*, 120 Ga. 1030, 48 S. E. 438.

There is some controversy between counsel with reference to the testimony relating to the condition of the cross-piece which gave way and caused the appellant's injury. While we must accept the record as certified to this court, we are satisfied that the testimony on this point was not correctly reported. Sometimes counsel and the witness are made to refer to the *brake* on the car and sometimes to the *break* in the cross-piece. To a certain extent the testimony is unintelligible, but it is apparent that some of the testimony at least referred to the break in the cross-piece on the wood rack, and that the appellant testified that the break was an old one. From the entire record the jury would have been warranted in finding that it is customary for trainmen to use the cross-pieces on the wood racks in boarding cars such as this in the manner in which the cross-piece in question was used by the appellant; that this custom was known to the respondent; that the cross-piece or wood rack was not reasonably safe for that purpose, and that its defective and unsafe condition could

have been ascertained by the respondent by the exercise of reasonable diligence and proper inspection.

Was the appellant guilty of contributory negligence? The respondent contends that he was for two reasons; first, in attempting to board a moving train in the manner in which he did; and second, because he failed to inspect the car as required by the rules of the company. It certainly cannot be said, as a matter of law, that a brakeman is guilty of negligence if he attempts to board a moving train. The testimony shows clearly that such is the common custom, and it is perhaps not going too far to say that the existence of such a custom is a matter of common knowledge. *Prosser v. Montana Cent. R. Co.*, 17 Mont. 372, 43 Pac. 81, 30 L. R. A. 814.

The rule of the company which imposed the duty of inspection on the appellant is as follows: "672 (a) Brakemen report to trainmaster, assistant superintendent, or superintendent, and obey the conductor, with whose duties they will become familiar and assist in performing." Other rules impose the duty of inspection on conductors, and it is contended that the above rule imposes a like duty on brakemen. It must be apparent that a brakeman on a dark morning has but little opportunity to inspect cars while engaged in the discharge of his other duties, and a railroad company cannot avoid liability to its employees by imposing upon them the duty of inspection, unless a reasonable opportunity is given for the discharge of that duty.

"A master cannot shift upon his employees his responsibility to them for injuries resulting from defects due to wear and tear, by devolving upon them the duty of inspection, unless they are given time and opportunity to make such inspection, as would reveal the defects. And this may be said to be the effect of the decisions. It is considered that such rules should receive a reasonable interpretation, and that the obligations of the servant should be determined with reference both to the character of the defect and to his ability to make an examination. Upon this basis the validity of rules or agreements of the ordinary tenor by which servants are obligated

24—48 WASH.

to examine appliances may often be upheld. But if they are couched in terms which indicate a clear and absolute intention on the employer's part to impose a more extensive obligation upon the servant than is thus declared to be permissible, they will be treated—by most courts at all events—as an illegal attempt to subject the latter to the duty which is incumbent upon the former, of seeing that the plant is in a reasonably safe condition." 1 Labatt, Master and Servant, p. 1178.

See, also, *Matchett v. Cincinnati etc. R. Co.*, 132 Ind. 334, 31 N. E. 792; *Strong v. Iowa Central R. Co.*, 94 Iowa 380, 62 N. W. 799; *Holmes v. Southern Pac. R. Co.*, 120 Cal. 357, 52 Pac. 652.

On the entire record we are of opinion that the question of negligence on the part of the respondent and of contributory negligence on the part of the appellant should have been submitted to the jury under proper instructions, and for the court's failure so to do the judgment is reversed and a new trial ordered.

HADLEY, C. J., DUNBAR, and FULLERTON, JJ., concur.