No. 19,733.

## J. E. DRAKE and IDA A. DRAKE, *Appellants*, v. THE TOPEKA RAILWAY COMPANY, *Appellee*.

### SYLLABUS BY THE COURT.

STREET RAILWAY—*Conductor Killed by Drunken Passenger—Assumption of Risk—Liability of Railway Company.* A conductor on a street car was shot and mortally wounded by a drunken passenger who became incensed because mildly remonstrated with by the conductor who in dealing with him followed the rules prescribed by the company for such emergencies, which rules were in effect expressions of the common-law duty of a carrier and in line with the dictates of common humanity. *Held,* that for the promulgation of such rules and the failure to warn the deceased of the dangers incident to the presence of intoxicated passengers the company is not liable, such rules being proper and such warning being needless.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed December 11, 1915. Affirmed.

*J. M. Stark,* of Topeka, for the appellants.

*L. S. Ferry, T. F. Doran,* and *J. S. Dean,* all of Topeka, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiffs appeal from an order sustaining a demurrer to their petition. A street-car conductor was shot and fatally wounded by a drunken passenger. The petition alleged in substance that in obedience to his company's rules and in accordance with his duty the deceased remonstrated with this passenger and sought to maintain order and proper conduct on the car, which angered the passenger, who upon arriving at his destination addressed profane and insulting language to the conductor, and was requested by him to leave the car, and thereupon backed out into the vestibule, and just as he was leaving the car fired the fatal shot; that the shooting was the result of the efforts made by the conductor to maintain order, that his assailant was too drunk to be responsible for his actions, and that the deceased sustained his injuries wholly and solely by reason of the rules and regulations of the company and his obedience thereof

and compliance therewith. These rules are in substance that employees are required to exercise constant care to prevent injury to persons or property and in all cases of doubt to take the safe side; that conductors and motormen must treat all passengers with politeness, avoid difficulty, and exercise patience, forbearance and self-control under all conditions, and must not make threatening gestures or use loud, uncivil, indecent or profane language even under the greatest provocation; that no passenger shall be forcibly ejected without the order of an inspector, starter or official of the company-unless the conduct of the passenger is dangerous or grossly offensive. No passenger shall be ejected for mere intoxication unless dangerous or offensive, and then with great care, and must be guided until free from probable injury.

It is impossible to see how the conductor could have taken employment without incurring the danger incident to all conductors from drunken and disorderly passengers who now and then infest the cars of common carriers. Equally difficult is it to preceive how the fact that the conductor remonstrated with the disorderly passenger without any attempt to eject him was the cause of the injury in the sense that it can be attributed to the negligence of the company. It is alleged that the effect and purpose of such rules were to benefit and protect the defendant's property and to protect it from the claims of passengers arising on account of the wrongful acts of other passengers and that such rules wrongfully placed the deceased in a situation of danger. But the rules appear to be but a fair expression of the common-law duty devolving upon common carriers and also the natural duty which would be required by the dictates of humanity and in no just sense can it be said that the rules made the car a place of danger to the conductor, because it is apparent that it was the malevolence of the murderous passenger that made the place dangerous and caused the injury.

No liability can arise save from failure of duty. While it is argued that the company owed it to its employee not to make the rules quoted and also the affirmative duty to warn him, it is apparent that such rules were quite fair to him, their natural effect being to avert rather than to court danger. A conductor soon becomes more familiar with the passengers on his run

than the officers of the company, and no conductor need be told what everybody knows, that a drunken man is likely to be dangerous. He was told by the rules, however, how to act when such a character had to be dealt with, and had he exceeded them and attempted to assault, eject or resist his assailant more promptly or more forcibly than he did he would probably have only met his mortal injury the sooner.

Counsel rely on cited authorities, a number of which will be briefly noticed. *Wurtenberger v. Railway Co.*, 68 Kan. 642, 75 Pac. 1049, declared the rule that where a master orders a servant into a place of danger he will not be denied a recovery for an injury received in consequence of his obedience on account of contributory negligence or assumption of risk, "unless the danger was so glaring that no prudent man would have encountered it, even under orders from one having authority over him." (Syl. ¶ 2.) There the workman while operating a hydraulic jack expressed his fears of its condition but was assured of its safety by the foreman and directed to proceed. In *Railroad Co. v. Morris*, 76 Kan. 836, 93 Pac. 153, a similar ruling was made, the injured party having been ordered to stop a moving car in accordance with certain rules of the railroad company. It was said in the opinion that he was required to be loyal as well as to be careful, and the same might be said of the conductor in this case, which presents no situation of an employee suddenly ordered into a place of danger. *Stephens v. The Hannibal & St. J. Ry. Co.*, 96 Mo. 207, is in line with the Wurtenberger case. *Holzhouser v. Denver, G. & E. Co.*, 18 Colo. App. 431, 72 Pac. 289, holds that an employer who puts an employee at work knowing that he will be in danger of injury by strikers is bound to warn him of such danger, a situation not presented nor analogous to the one set up in the petition. *Howe v. Buffalo, N. Y. & Erie R. R. Co.*, 37 N. Y. 297, involved the liability of the company for the ejection of a passenger by its conductor, who in obedience to its rules refused to take a ticket issued by another company. The conductor was sued and held liable, and this decision fixed the liability over of his employer. *T. & N. O. Ry. Co. v. Echols*, 87 Tex. 339, 345, 27 S. W. 60, 28 S. W. 517, declares the doctrine that while it is the master's duty to make rules for the safety of his employees in a complex business, in a work which an or-

dinary workman can readily understand, and which involves no dangerous machinery or extra hazard, such rules are not required. *Herr v. Green*, 156 Iowa, 532, 136 N. W. 511, was the ordinary case of a servant ordered to perform a dangerous task, his obedience not carrying with it an assumption of risk. *Kelly v. Shelby R. Co.*, 15 Ky. Law Rep. 311, 22 S. W. 445, is somewhat similar in fact and effect to the Holzhouser case, the plaintiff's nonsuit being affirmed. In *Holmes v. Southern Pacific Co.*, 120 Cal. 357, 52 Pac. 652, a rule of the company that a stick must be used in making certain couplings was held to be void if impracticable, and it was declared that the nonobservance of such a rule would be no defense. *Warn v. N. Y. C. & H. R. R. R. Co.*, 80 Hun (N. Y. Supr. Ct.), 71, holds that a corporation in making rules for its employees must use ordinary care to anticipate and guard against dangers. Our attention is called to sections 2453 and 2454 of volume 6 of the second edition of Labatt on Master and Servant as a side light on this case. These sections discuss actions against employers for injuries caused by their servants—especially in assault cases, but do not touch upon an action by a servant against his company for an assault committed by a passenger.

The case principally relied on is *Baxter v. Roberts*, 44 Cal. 187. There a carpenter while engaged in tearing away some boards from a fence enclosing a lot owned by the defendant, was shot by some one who claimed possession of the lot. The trial court instructed that if the defendant knew or had reason to believe that resistance would be offered, it was his duty to impart such knowledge to his employee. This was held proper, and it was said:

"The general principle which forbids the employer to expose the employe to unusual risks in the course of his employment, and to conceal from him the fact of such danger, is not affected by the fact that the danger known to the employer arose from the tortious or felonious purposes or designs of third persons acting in hostility to the interests of the employer and through agencies beyond his control." (p. 192.)

It is true that the petition alleges that the officers of the company were more experienced in the operation of street cars than the deceased, and well knew that the rules would place him in a situation of danger and were enacted for the purpose of protecting the company from claims of passengers arising

from the wrongful acts of other passengers. It was alleged that the defendant had not elected to come within the provisions of the compensation act (Laws 1911, ch. 218), and it is urged that for this reason it can not plead assumption of risk. But while the petition was demurred to, and hence assumption was not pleaded, the fact remains that no defense need be pleaded until a cause of action is stated, and none can be stated without alleging some failure of duty. As already indicated, we are unable to deduce such failure from the averments of the petition, and are therefore constrained to hold that the demurrer was rightfully sustained.

The judgment is affirmed.